# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **THOMAS J. GALLEGOS,** | |
| **Plaintiff,** | |
| **v.** | **Case No.  14-CV-1147-DDC** |
| **CAROLYN W. COLVIN,**<br>**Acting Commissioner of Social Security,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

Plaintiff Thomas Gallegos seeks judicial review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for benefits under Title II of the Social Security Act, as amended. Plaintiff has filed a brief asking the Court to remand this case to the Commissioner (Doc. 7). The Commissioner has filed a response brief (Doc. 8). This matter ripened for decision when plaintiff filed a reply brief on October 24, 2014 (Doc. 9). Having reviewed the administrative record and the parties' briefs, the Court affirms the Commissioner's decision denying plaintiff benefits for the reasons explained below.

## I.      Factual Background and Procedural History

Plaintiff applied for disability insurance benefits ("SSD") under Title II, 42 U.S.C. §§ 401-433, alleging disability beginning on January 31, 2011.[1] (R. 10) The Commissioner denied plaintiff's claims initially and denied them again upon reconsideration. (*Id.*) Plaintiff appeared and testified at a hearing conducted before an Administrative Law Judge ("ALJ") on September

---

[1] Plaintiff originally alleged disability beginning in March 2010 (R. 208), but amended his alleged onset of disability to January 2011 at the administrative hearing. (R. 30)

11, 2013.  (*Id.*)  On October 25, 2013, the ALJ issued a written decision in which she concluded that plaintiff was not disabled as the term is defined in the Social Security Act.  (R. 10-21)  On March 22, 2014, the Appeals Council of the Social Security Administration denied plaintiff's request for review.  (R. 1-3)  Plaintiff has exhausted his administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner, subject to judicial review under 42 U.S.C. § 405(g).

Plaintiff was born in January 1978.  (R. 22, 30)  He has served 14 years in the military, including two combat tours in Iraq.  (R 354)  Plaintiff alleges disability due to many impairments, including post-traumatic stress syndrome ("PTSD"), sleep apnea, degenerative disc disease, migraines, traumatic brain injury, major depression, anxiety, organic brain syndrome, Dandy-Walker syndrome, degenerative arthritis of the spine, bulging disc of the cervical spine, and degenerative joint disease of the right knee.  (R. 247)  The ALJ concluded that five of these impairments—degenerative disc disease, degenerative joint disease of the right knee, obesity, organic brain syndrome, and post-traumatic stress disorder—were "severe impairments" under 20 C.F.R. § 404.1520(c).  (R. 12)  The ALJ also concluded that plaintiff had two "non-severe" impairments—obstructive sleep apnea and Dandy-Walker syndrome (R. 12-13)—meaning that, in the ALJ's view, these impairments do "not significantly limit [plaintiff's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a).

Ultimately, however, the ALJ denied plaintiff's benefits applications because she concluded:  (1) that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in Appendix 1 to Subpart P of the Social Security Regulations (20 C.F.R. Pt. 404, Subpt. P, App. 1) (R. 13-15); and (2) that plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §

404.1567(a), so long as the work involves simple and intermediate tasks and only occasionally requires him to work with other people.  (R. 15-20)

## II.     Legal Standards

### A.     Standard of Review

Plaintiff's appeal invokes the Court's power of judicial review under 42 U.S.C. § 405(g). Section 405(g) grants federal courts authority to conduct judicial review of final decisions of the Commissioner and "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with or without remanding the case for a rehearing." Judicial review of the Commissioner's denial of benefits is limited to whether substantial evidence in the record supports the factual findings and whether the Commissioner applied the correct legal standards.  *Cowan v. Astrue*, 552 F.3d 1182, 1184-85 (10th Cir. 2008) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)).  "If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed."  *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lax*, 489 F.3d at 1084.  It must be "more than a scintilla," although it need not be a preponderance.  *Id.*  While courts "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," they neither reweigh the evidence nor substitute their judgment for the Commissioner's.  *Id.* (citation and internal quotation marks omitted).  But they also do not accept "the findings of the Commissioner" mechanically or affirm those findings "by isolating facts and labeling them substantial evidence, as the court[s] must scrutinize the entire record in

determining whether the Commissioner's conclusions are rational."  *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012).  When determining whether substantial evidence supports the Commissioner's decision, courts "examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision."  *Id.*  "Evidence is not substantial if it is overwhelmed by other evidence, particularly certain types of evidence (*e.g.*, that offered by treating physicians) or if it really constitutes not evidence but mere conclusion."  *Lawton v. Barnhart*, 121 F. App'x 364, 366 (10th Cir. 2005) (quoting *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987)).

The Court thus will review the ALJ's decision denying plaintiff benefits to determine whether it is "free from legal error and supported by substantial evidence."  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

###    B.    Disability Determination

Claimants seeking Social Security disability benefits carry the burden to show they are disabled.  *Wall*, 561 F.3d at 1062 (citation omitted).  In general, the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner follows "a five-step sequential evaluation process to determine disability."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (discussing 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (governing claims for supplemental security income)).  As summarized by our Circuit, this familiar five-step process proceeds as follows:

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity.  If not, the agency proceeds to consider, at step two, whether a claimant has a medically severe impairment or impairments. . . . At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation.  If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him or] her from performing [his or] her past relevant work. Even if a claimant is so impaired, the agency considers, at step five, whether [he or] she possesses the sufficient residual functional capability [RFC] to perform other work in the national economy.

*Wall*, 561 F.3d at 1052 (citations and internal quotation marks omitted); *accord* 20 C.F.R. § 404.1520(b)-(g).  The claimant has the "burden of proof on the first four steps," but the burden shifts to the Commissioner "at step five to show that the claimant retained the RFC to 'perform an alternative work activity and that this specific type of job exists in the national economy.'" *Smith v. Barnhart*, 61 F. App'x 647, 648 (10th Cir. 2003) (quoting *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).  This analysis terminates if the Commissioner determines at any point that the claimant is or is not disabled.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

## III.   Issues for Review

Plaintiff asks the Court to remand this case to the Commissioner, asserting that the ALJ: (1) failed to conduct an adequate analysis about whether the combined effects of his impairments medically equaled a listing-level condition (*see* Doc. 7 at 4-5); and (2) failed to weigh evidence properly when she evaluated the severity of plaintiff's impairments.  (*Id.* at 7-10, 13).  The Court addresses each argument below.

### A.   Whether Plaintiff Had a Combination of Impairments Medically Equal to a Listing-Level Condition

Step Three of the sequential evaluation process required the ALJ to decide whether plaintiff's "medically severe impairments are equivalent to a condition listed in the appendix of

[Subpart P of the Social Security Regulations]." *Wall*, 561 F.3d at 1052. The three standards for finding medical equivalence are set forth in 20 C.F.R. § 404.1526(b), which provides:

(1) (i) If you have an impairment that is described in appendix 1, but—

    a. You do not exhibit one or more of the findings specified in the particular listing, or

    b. You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,

(ii) We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.

(2) If you have an impairment(s) that is not described in appendix 1, we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing.

(3) If you have a combination of impairments, no one of which meets a listing (*see* § 404.1525(c)(3)), we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

*See also Avery v. Astrue*, 313 F. App'x 114, 122 (10th Cir. 2009). The ALJ must consider a claimant's impairments in combination and not isolate them when evaluating their effects and severity. *See* 20 C.F.R. § 404.1523 (requiring the ALJ to "consider the combined effect of all of [claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity").

Here, the ALJ reviewed plaintiff's impairments and concluded that none of them imposed limitations severe enough to meet the medical equivalence criteria. Plaintiff asserts that the ALJ did not conduct a genuine equivalency analysis but, instead, merely "parrot[ted] the standard language of ALJ decisions." (Doc. 7 at 12-13). Plaintiff also asserts that the ALJ only

considered the equivalency of his impairments in isolation, not in combination, as is required by subsection (3) to 20 C.F.R. § 404.1526(b).

As an initial matter, the Court disagrees with plaintiff's characterization of the ALJ's step-three analysis. The ALJ conducted a detailed step-three analysis that spanned more than two pages of her decision. For each severe impairment, the ALJ identified the relevant listing-level condition, described the medical equivalence criteria for each listing condition, and applied these criteria to the medical evidence in the record. (R. 13-15). She concluded: (1) that plaintiff's back and knee pain did not meet or medically equal Listing 1.02 (major dysfunction of a joint) or Listing 1.04 (disorders of the spine); (2) that his obesity was not disabling even when considered in combination with his other impairments; and (3) that his mental impairments did not meet or medically equal Listing 12.02 (organic mental disorder) or Listing 12.06 (anxiety-related disorders). (*Id.*)

Plaintiff's brief does not identify which listing-level condition he believes his impairments equaled. Nor is it possible for the Court to identify such listings based on the arguments or facts plaintiff asserts to support his appeal. Plaintiff's brief simply lists his many medical conditions and asserts that, surely—given such a long list of conditions—the Court can find a reversible error somewhere in the ALJ's medical equivalency analysis. But it is not the Court's job to scour the record to develop plaintiff's argument for him. *See Nelson v. Colvin*, No. CIV.A. 13-1199-JWL, 2014 WL 4794393, at *4 (D. Kan. Sept. 25, 2014). Nevertheless, the Court—based on one introductory passage in plaintiff's brief that specifies a listing-level condition—construes plaintiff's argument to assert that his mental health impairments met the listing-level severity for an anxiety disorder (Listing 12.06). *See* Doc. 7 at 4-5 ("[I]f there ever were a DIB application that cried out for a thorough 'equivalency' determination based upon a

combination of many impairments, one nearly listing level (12.06 Anxiety Related Disorder), . . . it would be plaintiff's DIB application.").

A claimant has the burden at step three of demonstrating through medical evidence that his impairments "meet *all* of the specified medical criteria contained in a particular listing." *Riddle v. Halter*, 10 F. App'x 665, 667 (10th Cir. 2001). "Whether the findings for an individual's impairment meet the requirements of an impairment in the listings is usually more a question of medical fact than a question of medical opinion." *Titles II & Xvi: Med. Source Opinions on Issues Reserved to the Comm'r*, SSR 96-5P (S.S.A. July 2, 1996) (quoted in *Avery*, 313 F. App'x at 121). "In most instances, the requirements of listed impairments are objective, and whether an individual's impairment manifests these requirements is simply a matter of documentation." *Id.*

Listing 12.06 requires a claimant to present evidence satisfying the criteria either of Paragraphs A and B or Paragraphs A and C of the listing. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 at § 12.06. Here, the ALJ concluded that plaintiff's anxiety-related impairments failed to satisfy paragraphs B or C of this regulation. Paragraph B requires that the claimant experience at least two of the following limitations: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of an extended duration. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 at § 12.06(B). A "marked" limitation is one that is "more than moderate but less than extreme . . . [and where] the degree of limitation is such as to interfere seriously with [a claimant's] ability to function independently, appropriately, effectively, and on a sustained basis ." *Id.* at § 12.00(C).

In considering the first criterion—restrictions in plaintiff's activities of daily living—the ALJ found that such restrictions were mild.  The ALJ relied upon an "Adult Function Report" that plaintiff completed on August 27, 2012.  (R. 261-70)  Although this report documented some limitations, it suggests that plaintiff was able to "attend to his own personal care needs; prepare simple meals; perform household chores; leave his home by himself; drive a car; and shop in stores."  (R. 14)

On the second criterion—plaintiff's difficulties in social functioning—the ALJ concluded that plaintiff's restrictions were "moderate" but not "marked."  (*Id.*)  The ALJ credited evidence demonstrating plaintiff's history of anger control problems but found that other evidence established that he had benefited from anger management therapy.  (*Id.* citing (R. 541))  She also noted that plaintiff reported that he was able to control his temper and aggressive impulses, get along with authority figures, and has never lost a job due to problems with social interactions. (*Id.* (citing R. 1824, 1852))

In assessing the third criterion— plaintiff's ability to maintain concentration, persistence, or pace—the ALJ concluded that plaintiff experienced moderate but not marked difficulties.  She relied principally on a Neuropsychological Evaluation Report completed by Dr. Janyna Mercado. In this report, Dr. Mercado concluded that plaintiff functioned "within normal limits in most cognitive domains assessed."  (R. 355)  The ALJ also noted that whatever cognitive deficits plaintiff has experienced, they did not prevent him from working towards a college degree at Butler Community College.  (R. 14-15)  The record as a whole, according to the ALJ, supported a finding that plaintiff suffered only moderate difficulties in maintaining concentration, persistence, and pace. [2]

---

[2] The ALJ quickly dispensed with the fourth criterion by stating that no episodes of decompensation are present in the record.  Plaintiff does not challenge this conclusion on appeal.

Thus, the ALJ found that plaintiff did not have marked difficulties in any of the Paragraph B criteria.  She then addressed whether plaintiff's impairments satisfied Paragraph C and concluded they did not.[3]  Because the ALJ found that plaintiff's mental impairment did not satisfy Paragraph B or Paragraph C, she also was required to conclude that his impairments were not medically equivalent to Listing 12.06.

Contrary to plaintiff's assertion, the ALJ did not consider these conditions in isolation.  Rather, the ALJ applied her analysis to plaintiff's "mental impairments"—*i.e.,* she referred to his impairments in the plural and addressed their cumulative and combined effects.  (R. 13-15)  The ALJ acknowledged explicitly, several times, that the standard for disability under the Act required her to consider plaintiff's "combination" of impairments (R. 11, 13) and then found that plaintiff did "not have an impairment or combination of impairments" that met or medically equaled a listing-level condition.  The Court thus concludes that the ALJ applied the appropriate standard to determine whether plaintiff's mental impairments met or equaled Listing 12.06 and that her finding is supported by substantial evidence in the record.

### B.  Plaintiffs Challenges to the ALJ's Factual Findings

Plaintiff has asserted several miscellaneous challenges to how the ALJ weighed evidence in the record.  Specifically, plaintiff argues that:  (1) the ALJ erroneously concluded that plaintiff could function adequately despite his depression; (2) the ALJ accredited too little weight to the opinions of plaintiff's treating psychologist; and (3) the ALJ rejected the lay testimony of plaintiff's mother-in-law without adequate justification.  The Court addresses each of these arguments, in turn, below.

---

[3] Paragraph C of Listing 12.06 asks whether plaintiff's anxiety related impairments result in a "complete inability to function independently outside the area of one's home."  20 C.F.R. Pt. 404, Subpt. P, App. 1 at § 12.06(C).  The ALJ found no evidence in the record that plaintiffs' mental impairments prevented him from functioning independently outside the home.  (R. 15)  Plaintiff also does not challenge this aspect of the ALJ's decision on appeal.

### 1. *Plaintiff's Chronic Depression*

Plaintiff asserts that the ALJ's conclusion that his depression was only "mild" is not supported by substantial evidence in the record.  Plaintiff's argument relies on his Global Assessment Functioning ("GAF") scores that doctors recorded at various times during his treatment.  "The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'"  *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("APA Diagnostic Manual") (4th ed. 2000) at 32).  "A GAF score of 51-60 indicates 'moderate symptoms,' such as a flat affect, or 'moderate difficulty in social or occupational functioning.'" *Id.* (quoting APA Diagnostic Manual at 34).  "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job. *Id.* (quoting APA Diagnostic Manual at 34).

Plaintiff completed a GAF assessment on five separate occasions.  His scores were:  64 on January 24, 2011 (R. 963); 50 on June 2, 2011 (R. 738); 68 on January 13, 2012 (R. 573); 60 on January 18, 2012 (R. 569); and 60 on February 13, 2012 (R. 553).  Evaluated under the APA Manual's rubric, plaintiff's scores once indicated serious symptoms, twice indicated moderate symptoms, and twice indicated mild symptoms.  *See* APA Diagnostic Manual at 32-34.  The mean of these scores is 60.4 and the median is 60.  The ALJ thus did not err in characterizing these numbers in the "low sixties."  (R. 19)  Plaintiff's argument asks the Court to isolate one of five GAF scores and conclude that plaintiff suffered severe mental impairments.  The Court declines to do so. *See Alfrey*, 904 F. Supp. 2d at 1167 (stating that the Court must consider "the entire record in determining whether the Commissioner's conclusions are rational").

The average of these scores, according to the APA manual, could have supported a finding either of mild or moderate impairment.  The ALJ selected one of two reasonable classifications of plaintiff's overall GAF scores.  The Court cannot conclude that her choice was unsupported by substantial evidence.  *See Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (a finding of "no substantial evidence" is only appropriate where there is a "conspicuous absence of credible choices").

Nor can the Court conclude that the ALJ's classification of plaintiff's depression-related impairments conflicted with the record as a whole.  As the ALJ noted, intellectual testing showed that plaintiff had only mild deficits, intact intellectual abilities (R. 18 (citing R. 355-56)), and average attention and concentration abilities.  (*Id.* (citing R. 357))  The ALJ also noted that mental status examinations were "routinely unremarkable," showing organized thoughts and intact memory.  (*Id.* (citing R. 340, 552-53, 603))  Also, the ALJ relied on plaintiff's own reports about his anxiety symptoms, which he characterized as "stable," "mild," "tolerable," and "not socially limiting" with medications. (*Id.* (citing R. 540, 552))  Finally, as the ALJ acknowledged, plaintiff was enrolled in college and working toward a degree in database administration.  (*Id.*)  The ALJ properly considered this fact as evidence that plaintiff's mental impairments were not severe.  (*Id.* (citing R. 1908)).  *Cf. Gay v. Sullivan*, 986 F.2d 1336, 1339 (10th Cir. 1993) (holding that a claimant's school performance supported a finding he was not disabled).  The Court finds no error in the ALJ's conclusion that plaintiff retained the mental capacity to perform simple and intermediate level tasks.

### 2.  Weight of Dr. Johnson's Opinion

Plaintiff next argues the ALJ erred in according little weight to an opinion completed by Dr. Robert Johnson, plaintiff's treating psychologist and, instead, crediting opinions of state

agency phycologists.  (Doc. 7 at 7-10, 13)  A treating physician's statement is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques."  *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004).  But a physician's opinion is not entitled to controlling weight solely because the physician is a treating source.  *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009).  Rather, "[a]n ALJ may decline to give controlling weight to the opinion of a treating physician where he 'articulate[s] specific, legitimate reasons for his decision,'" *id.* (quoting *Cowan*, 552 F.3d at 1189), including when the treating source opinion is "inconsistent with other substantial evidence in the record." *Id.* (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

Here, the ALJ gave little weight to Dr. Johnson's opinion, concluding that his findings were "not supported by [plaintiff's] treatment records."  (R. 19)  Specifically, the ALJ noted that other treatment records revealed only mild cognitive deficits, including:  GAF scores in the sixties indicating, at most, mild functional impairment, average intellectual functioning, and no documented instances of sustained decompensation.  (*Id.*)  The ALJ also noted elsewhere in her decision that intellectual testing showed only mild deficits and mostly intact cognitive abilities (*see* R. 18 (citing R. 355-56)) and that plaintiff had an average ability to concentrate.  (*See id.* (citing R. Tr. 357) (noting that plaintiff "performed in the average range on measures of attention and concentration"))  And plaintiff's mental status examinations were "routinely unremarkable," which also indicated organized thoughts, an intact memory, and an adequate ability to concentrate.  (*Id.* (citing R. 340, 552-53, 603))  The ALJ also relied on plaintiff's own characterization of his anxiety symptoms to treating sources as "stable," "mild," "tolerable," and "not socially limiting" with medications.  (*Id.* (citing R. 540, 552)  Finally, the ALJ considered

that plaintiff had enrolled in college and was working toward an associate's degree in database administration.  (*Id.* (citing R. 1098)).

Because she found them more consistent with the medical evidence described above, the ALJ gave substantial weight to the opinions of two state agency psychologists, Dr. Robert Blum and Dr. Kyle Timmerman.  These psychologists opined that plaintiff had some limitations in interacting with others, but his limitations were not so severe that they precluded all work (R. 19 (citing R. 95-96, 110-11, 1804, 1879))  Dr. Stern stated that plaintiff had only "moderate" limitations in maintaining social functioning, was "not significantly limited from competitive employment by his mental impairments," and was able to perform jobs requiring only infrequent social interaction. (R. 95-96)  Dr. Blum agreed.  (R. 110-11, 1879)  Not only was the ALJ's decision to credit Dr. Blum's and Dr. Timmerman's opinions over Dr. Johnson's a reasonable one, but she adequately described her reasons for doing so.  *See Raymond*, 621 F.3d at 1272. The Court thus finds no error in the ALJ's decision to accord Dr. Johnson's opinion little weight.

Also, though the ALJ gave little weight to Dr. Johnson's report, her RFC determination accounts for the limitations Dr. Johnson's report identified.  The ALJ limited plaintiff to performing tasks that required no more than occasional interaction with the general public, coworkers, and supervisors, and that are not performed as part of a team or with other people. (R. 15)  Instead, she limited him to jobs that primarily involve work with "things and data."  (*Id*) It is not even clear then whether the ALJ's failure to credit Dr. Johnson's opinion materially impacted the ALJ's RFC determination.

### 3.  *Plaintiff's Mother-in-Law's Lay Testimony*

Last, plaintiff asserts the ALJ erred in rejecting a lay witness statement completed by his mother-in-law in which she claimed that plaintiff's chronic pain and PTSD prevented him from

working.  (Doc. 7 at 10-12)  In general, the ALJ must "consider all relevant evidence in an individual's case record."  SSR 06-03p, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2007).  But the burden imposed on an ALJ to *explain* her decision to discredit a nonacceptable medical source (such as lay opinion) is a light one.  *See id.*  "'In the case of a nonacceptable medical source . . . the ALJ's decision is sufficient if it permits [a reviewing court] to 'follow the adjudicator's reasoning.'"  *Id.* (quoted in *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012)).

Here, the ALJ concluded that plaintiff's mother-in-law's statement was entitled to little weight for three reasons:  (1) it was based on casual observation rather than objective medical evidence and testing; (2) it was potentially influenced by her family loyalties; and (3) it was inconsistent with "the accumulated medical evidence [about] the extent to which [plaintiff's] impairments limit [his] functional abilities."  (R. 19) Plaintiff challenges the ALJ's first two reasons because they apply with equal force to almost any lay testimony. (*see* Doc. 7 at 11 (citing *Spicer v. Astrue*, No. 1:08CV357-SRW, 2010 WL 4176313, at *2 (M.D. Ala. Oct. 18, 2010))  But the ALJ's third reason does not suffer from this problem.  Rather, it is a proper and case-specific reason for an ALJ to decline to credit lay testimony.  *See* SSR 06-03p, 2006 WL 2329939, at *3 (instructing the ALJ to consider whether the lay opinion is consistent with the record as a whole).  The Court thus concludes that the ALJ proffered a legitimate rationale for rejecting plaintiff's mother-in-law's statement.  And her reason for doing so was justified by substantial evidence in the record.  *See supra*, pp. 13-15 (describing the substantial medical evidence that conflicts with plaintiff's mother-in-law's statement).

## IV.   Conclusion

The ALJ reasonably determined that plaintiff's impairments did not meet or medically equal a listing-level condition.  First, she properly considered all of plaintiff's impairments,

15

including their combined and cumulative effects.  Second, the relative weight she accorded the record evidence was appropriate, and she adequately explained the reasons for her findings. Finally, substantial evidence supports her medical equivalency analysis and her conclusion that plaintiff maintains an RFC to perform a range of sedentary work that involves simple and intermediate tasks and only occasionally requires him to work with others.  The Court thus affirms the ALJ's decision denying plaintiff's SSD benefits.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Commissioner's decision denying plaintiff Social Security Disability benefits is affirmed.

**IT IS SO ORDERED.**

**Dated this 11th day of August, 2015, at Topeka, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**